Filed 6/14/22  P. v. Allen CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D078721 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN187510) |
| EARL ALLEN, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Brad A. Weinreb, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Melissa Mandel, Assistant Attorney General, Alan Amann and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.


In 2005, Earl Allen pleaded guilty to one count of second degree murder and was sentenced to 15 years to life in prison.  The charge arose after he and three others engaged in a series of shootings that left one man dead.  As the

factual basis for his plea, Allen admitted he "was present, had knowledge of and aided and abetted the taking of the life of [the victim.]"

In 2019, Allen filed a petition for resentencing under Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which amended the "felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1 subd. (f).) The law also provided a mechanism for resentencing of individuals whose convictions would not meet the new standard (Pen. Code, § 1170.95[1]).

The trial court issued an order to show cause on Allen's petition for resentencing and conducted an evidentiary hearing. Thereafter, the court denied Allen's petition, finding the relief afforded by the new law was not available to Allen because the record of conviction, including Allen's plea and the evidence presented at his preliminary hearing, showed Allen's intent to kill as a direct aider and abettor of the murder committed by him or one of his companions.

Allen now challenges the trial court's order, asserting the court erred in denying his petition because it improperly considered the plea admission and because the court's findings are not supported by substantial evidence. We conclude the plea was properly considered by the trial court and that Allen has failed to show prejudicial error because substantial evidence supports the court's determination. Accordingly, we affirm the trial court's order denying Allen's petition.

---

[1]    Subsequent undesignated statutory references are to the Penal Code.

2

FACTUAL AND PROCEDURAL BACKGROUND

Late on the night of July 24, 2004, and continuing into the early hours of the next day, Allen attended a party in Vista with friends Christopher Gooden, Ricky Cowart, and Kevin McCray. At some point in the evening, Cowart suggested they leave the party to go "smoke some esses," a term they used for Hispanic gang members. The group drove to an area near Santa Fe and Orange Avenue in Vista. According to Allen, McCray and Cowart got out of the car while Allen and Gooden waited in the backseat. A short time later, Allen heard four or five gunshots, and then saw McCray and Cowart running back to the car. A Hispanic man was later found dead in the same area with multiple gunshot wounds. The group then returned to the party in Vista.

Allen and his three friends then left the party again and went to an area in Oceanside known for Hispanic gang activity. They stopped near a home on Lemon Street. Cowart got out of the car and fired several shots from a handgun into the home. A woman living there woke up to the sound of glass breaking and later found one of her windows had three bullet holes. The group left Lemon Street and, as Allen explained in his interview with police, drove around for "10 or 15 minutes looking for more esses to shoot."

Then, near a taco shop by Mission and San Diego Street, Cowart fired the gun at a Hispanic man. After this shooting, the group continued driving around the area, looking for other gang members, who they knew frequented the area, to shoot. When they did not find anyone, they stopped at the corner of Calle Montecito and Calle Las Positas and took turns shooting at a stop sign.

After reports of gunfire from various witnesses in Oceanside, the police were dispatched to the shootings. An Oceanside police officer called to the stop sign shooting spotted the group's vehicle—a small SUV with a white top

3

and red bottom—which matched the description reported by several witnesses.  The officer pulled over the vehicle, and Cowart jumped out of the car from the front passenger seat and ran.  McCray, in the driver's seat, and Gooden and Allen, in the backseat, initially told police they were carjacked by the fleeing Cowart.  Police discovered two guns in the car, a shotgun propped against the front passenger seat and a .38 caliber handgun stuck in the crevice of the backseat between the headrest and the seat.

The men were arrested and interviewed by police.  Allen told police he was at the party in Vista when Cowart said they should leave to "go smoke some esses."  He admitted he was with the group when Cowart shot at the house on Lemon Street and at the man near the taco shop, that they drove around looking for gang members to shoot, and that he and the others had all taken turns shooting the stop sign.

After this initial interview, police learned the vehicle spotted at the shooting in Vista resulting in the death of the victim matched the Geo Tracker the group was pulled over in.  Police interviewed Allen a second time. He again admitted to being with Cowart, Gooden, and McCray at the party, and to being with the group when Cowart shot at the house and the man near the taco shop, and when they all shot at the street sign.

When the interviewing officer asked about the shooting in Vista, Allen initially denied he was with the group when the murder occurred.  However, he eventually admitted he was there, and told the officer he and Gooden stayed in the car while McCray and Cowart got out and shot the victim. Allen heard five shots before McCray and Cowart returned to the car and the group drove back to the party where they had been before.  Allen also told the officer he had seen the victim prior to the shooting.  Allen said he did not mention the shooting in his initial interview because he did not want to

4

snitch and that it had been McCray's idea to tell the police they had been carjacked by Cowart.

In his interview with police, Gooden initially said that Cowart and Allen had been the shooters, McCray had stayed in the car, and that he was the lookout. Gooden then changed his story and said he and Allen had stayed in the car.

A criminalist and firearms expert compared the bullets recovered from the murder victim's body and the house on Lemon Street with a round from the handgun found in the backseat of the SUV. The expert determined the bullets were fired from the recovered handgun. Fingerprint evidence also linked Cowart to the shotgun found in the car, and Gooden and Allen to the handgun. Finally, surveillance video from a convenience store in Oceanside around the time of the shootings showed Allen, Cowart, McCray, and Gooden in the Geo Tracker.

*1. Initial Prosecution and Guilty Plea*

The San Diego District Attorney filed a felony complaint on information against Allen and Gooden, charging them both with murder (§ 187, subd. (a), count 1), shooting at an inhabited dwelling (§ 246, count 2), discharging a firearm in a grossly negligent manner (§ 246.3, count 3), possessing a concealed firearm in a vehicle (§ 12025, subd. (a)(1), count 4), carrying a loaded firearm in public (§ 12031, subd. (a)(1), count 5), possession of marijuana for sale (Health & Saf. Code, § 11359, count 6), and attempted robbery (§§ 664, 211, count 7).[2]

---

[2] Count 7 related to another incident that occurred several months before the murder and is not relevant to the present appeal. Cowart and McCray were charged separately.

5

Several months after the charges were filed, Allen entered a plea agreement for second-degree murder on count 1. In his change of plea form, as the factual basis for the plea, Allen admitted that he "was present, had knowledge of and aided and abetted the taking of the life of" the victim.[3] After Allen entered the guilty plea, on the prosecution's motion, the court dismissed the remaining charges against him. Thereafter, the court sentenced Allen to an indeterminate term of 15 years to life in prison.

*2. Resentencing Petition*

In February 2019, Allen filed a petition under section 1170.95 seeking relief under the new law. In response, the District Attorney moved to dismiss the petition, arguing Senate Bill 1437 was unconstitutional. The District Attorney also filed a motion to deny the petition on the grounds it did not establish a prima facie case for relief because the facts stipulated as the basis for the plea established Allen was a direct aider and abettor of the murder. The court appointed counsel to represent Allen and scheduled briefing on the motions.

Allen's appointed counsel filed a response to the District Attorney's motion to dismiss the petition. The court then stayed the proceedings pending this court's decision on the constitutionality of the new law. In *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, this court

---

3 "Before accepting a guilty or no contest plea pursuant to a plea agreement in a felony case, the trial court is required to determine that a factual basis for the plea exists. (§ 1192.5; *People v. Holmes* (2004) 32 Cal.4th 432, 440–442.) 'The purpose of the requirement is to protect against the situation where the defendant, although he realizes what he has done, is not sufficiently skilled in law to recognize that his acts do not constitute the offense with which he is charged. [Citation.] Inquiry into the factual basis for the plea ensures that the defendant actually committed a crime at least as serious as the one to which he is willing to plead.' " (*People v. French* (2008) 43 Cal.4th 36, 50–51 (*French*).)

rejected the District Attorney's assertion the law was unconstitutional. After *Gooden* became final on February 19, 2020, the District Attorney renewed the motion to deny Allen's petition for resentencing on the grounds that Allen had failed to make a prima facie showing he was entitled to relief under Senate Bill 1437.

Allen responded to the motion, requesting an order to show cause why relief should not be granted. Both parties submitted the charging information, the preliminary hearing transcript, Allen's guilty plea form, and the minute order from Allen's sentencing hearing. The court found that Allen had made a prima facie showing that he was entitled to relief and issued an order to show cause. After the People filed a return to the order to show cause, the court conducted a hearing on the petition, and also reviewed the moving papers and the evidence submitted by the parties.

The following week, the trial court issued its order denying Allen's petition. The court first found that the evidence submitted by the parties was admissible under the standards articulated in *People v. Williams* (2020) 57 Cal.App.5th 652 and applied the burden of proof set forth in *People v. Rodriguez* (2020) 58 Cal.App.5th 227, opinion vacated and cause remanded for further consideration in light of Senate Bill No. 775 (Stats. 2021, ch. 551) (Senate Bill 775), (2021) 287 Cal.Rptr.3d 721, 500 P.3d 993 [which required the court to "sit as an independent trier of fact and determine whether the

7

People" prove the petitioner guilty of murder under the new law "beyond a reasonable doubt"] (*Rodriguez*).[4]

The trial court then found the People had met their burden to show that Allen, "as a principle[,] aided and abetted the commission of the murder."  The court pointed to both Allen's statement in his change of plea form and the evidence adduced at the preliminary hearing, which included police testimony that Allen and the other participants admitted their "plan to hunt down" Hispanic gang members and that Allen admitted they "discussed that their intended act was to kill 'esses' or Hispanic" gang members.  The court concluded this evidence showed Allen shared the murderous intent of the actual killer and that he was, therefore, not entitled to relief under Senate Bill 1437.  Allen timely appealed the court's order.

---

[4]	After the trial court issued its order in this case, the California Supreme Court granted review of *People v. Rodriguez* and subsequently transferred the case back to the Second Appellate District "with directions to vacate its decision and reconsider the cause in light of Senate Bill No. 775[.]" (*Rodriguez, supra*, 287 Cal.Rptr.3d 721.)  On October 5, 2021, the Governor signed Senate Bill 775, which became effective on January 1, 2022 and expanded the scope of section 1170.95 from petitioners "convicted of felony murder or murder under the natural and probable consequences doctrine" to petitioners convicted under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1170.95, subd. (a) as amended by Stats. 2021, ch. 551, § 2.)  The changes also made clear that "[a] finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Id*. subd. (d)(3).)  Senate Bill 775 also clarified that the rules of evidence govern the admission of evidence at the evidentiary hearing and made explicit that the court may consider the procedural history of the case recited by any prior appellate opinion.  (*Ibid*.)

8

# DISCUSSION

## I

### *Legal Principles*

To protect the "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability" (Stats. 2018, ch. 1015, § 1, subd. (d)), the Legislature enacted Senate Bill 1437 to narrow the scope of liability under the felony murder rule [and under the natural and probable consequences doctrine], and to provide a mechanism by which individuals convicted under the old standard could petition for resentencing if they could not be convicted under the new, narrower standard. (*People v. Gentile* (2020) 10 Cal.5th 830, 842; *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Senate Bill 1437 effectuated it's legislative goal by amending section 188, which defines malice, and section 189, which defines the degrees of murder. (Stats. 2018, ch. 1015, § 3.) As amended, section 188 states: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Amended section 189, subdivision (e) states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless

9

indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

The bill also enacted section 1170.95, which created the "procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 957.) Under section 1170.95, if the petitioner makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing at which the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner could still be convicted under the newly narrowed standards. (§ 1170.95, subds. (c), (d)(1)–(3); see *Lewis*, at p. 960; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 984 (*Ramirez*).) "If the prosecution fails to sustain its burden of proof, the prior conviction ... shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3); see *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 249.)

At the time of the hearing below, the statute stated that the "prosecutor and the petitioner may rely on the record of conviction" or may "offer new or additional evidence to meet their respective burdens." (Former § 1170.95, subd. (d)(3), added by Stats. 2018, ch. 1015 (Sen. Bill 1437), § 4, eff. Jan. 1, 2019.) As noted, section 1170.95, subdivision (d)(3) was subsequently amended by Senate Bill 775. The provision now states: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a

10

preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."

Contrary to Allen's assertion that this court should exercise its independent judgment on his petition, we review the trial court's determination at the section 1170.95 evidentiary hearing for substantial evidence. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 747; accord, *Ramirez, supra*, 71 Cal.App.5th at p. 985.) Under this standard, " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation]. We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)

II

*Analysis*

Allen makes several related arguments to challenge the trial court's denial of his petition. He asserts the court erred to the extent it relied solely on his admission in the plea form because his statement did not conclusively

establish direct aiding and abetting liability, rather than liability based on the natural and probable consequences doctrine. He argues his statement in the plea, that he "was present, had knowledge of and aided and abetted the taking of the life of [the victim]," could also mean that he intended to aid and abet a target offense, such as assault with a firearm, "but a murder was a natural and probable consequence of the target offense …." Allen also argues that "to the extent the court relied on the plea language and failed to adequately consider evidence adduced at the preliminary hearing, it erred." Finally, Allen asserts that insufficient evidence supported the trial court's finding that he was a direct aider and abettor of the murder, or that he acted with implied malice.

Allen's argument that his plea admission does not establish liability as a direct aider and abettor of the murder is not well-taken. " 'Liability for intentional, target offenses is known as "direct" aider and abettor liability; liability for unintentional, nontarget offenses is known as the " ' "natural and probable consequences' doctrine." ' " [Citation.] 'Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' " (*People v. Medrano* (2021) 68 Cal.App.5th 177, 183 (*Medrano*).)

Prior to Senate Bill 1437, "under the natural and probable consequences doctrine, an aider and abettor [could be found] guilty not only of the intended crime[, i.e. target offense], but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted.' " (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117 (*McCoy*).) In contrast, a direct aider and abettor "acts 'with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' " (*People v. Chiu*

12

(2014) 59 Cal.4th 155, 161.) In other words, "when guilt does not depend on the natural and probable consequences doctrine ... the aider and abettor must know and share the murderous intent of the actual perpetrator." (*McCoy,* at p. 1118.)

Here, Allen was charged with and admitted to aiding and abetting murder, not aiding and abetting a lesser crime that resulted in murder. The admission contained in the change of plea form, that Allen "had knowledge of and aided and abetted the taking of [the victim's] life" and which Allen confirmed at the plea hearing, does not implicate the natural and probable consequences theory of aiding and abetting liability because no other target offense was at stake. Rather, the only reasonable interpretation of this language establishes that the factual basis for the plea was Allen's direct aiding and abetting of murder. Thus, there was no opportunity in this case to convict Allen of " 'murder on a natural and probable consequences theory.' "[5] (*Medrano, supra*, 68 Cal.App.5th at p. 183.)

---

[5] Relying on *French, supra*, 43 Cal.4th 36, Allen argues that his admission in the change of plea form did not constitute a binding admission for purposes of his resentencing petition. We agree with the Attorney General that *French* has no bearing here. In *French*, the defendant challenged the use of the factual basis for his no contest plea for purposes of finding an aggravating circumstance to impose an upper term at sentencing. (*Id.* at pp. 48–49.) However, the factual basis agreed to by the defendant's counsel did not admit the aggravating circumstances found at sentencing. Rather, counsel stated only, " 'I believe the People have witnesses lined up for this trial that will support what the D.A. read in terms of the factual basis ....' " (*Id.* at p. 42.) In *French*, the record did "not contain any suggestion that either party understood that defendant, by pleading no contest, thereby admitted any factual issue relevant to imposition of sentence." (*Id.* at p. 49.) Here, in contrast, Allen did personally admit the truth of the factual basis for his guilty plea, resulting in a binding admission.

We also reject Allen's argument that the court erred to the extent it relied only on the plea form admission. First, the operative version of section 1170.95, subdivision (d)(3) provided that the trial court may consider "the record of conviction" in the case.[6] There is no dispute that the change of plea form containing Allen's admission of guilt was part of the record of conviction and was admitted as evidence at Allen's plea hearing. Accordingly, the admission was properly before the trial court at the

---

[6] As noted, the current version of the law, as amended by Senate Bill 775, makes clear that the record of conviction includes "evidence previously admitted at any prior hearing …." (§ 1170.95, subd. (d)(3).) We requested supplemental briefing on the impact of Senate Bill 775 on this case. In response, Allen's supplemental brief asserts that the changes made by the bill apply retroactively and that remand is required under the new law because the trial court failed to consider whether the preliminary hearing testimony should have been excluded as hearsay. The Attorney General argues the changes to the statute are not retroactive, but even if they are, the court properly considered the statements that Allen made to law enforcement officers, and which were admitted at the preliminary hearing, because they constituted admissions of a party. We decline to address the retroactivity of Senate Bill 775 because we agree with the Attorney General that the hearsay statements by Allen to law enforcement were subject to the hearsay exceptions for admissions by a party and declarations against penal interest, and thus properly considered by the trial court in its denial of Allen's petition for resentencing under either version of the law. (Evid. Code, §§ 1220, 1230; see *People v. Gonzalez* (2021) 12 Cal.5th 367, 409.)

evidentiary hearing on Allen's petition, and the court did not err in the manner Allen argues.[7]

Finally, we conclude substantial evidence supported the trial court's decision to deny Allen's petition. As discussed, guilt as a direct aider and abettor requires: (1) knowledge of the direct perpetrator's intent to commit the crime; (2) intent to assist in committing the crime; and (3) conduct that in fact assists in committing the crime. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225; *McCoy, supra*, 25 Cal.4th at p. 1117.) The defendant must not only know the direct perpetrator's intent, he must share that intent. (*Id.* at p. 1118.) The intent required for murder can be express or implied malice. Express malice is shown when the assailant intends to kill or knows to a substantial certainty that death will occur. (§ 188, subd. (a)(1); *People v. Smith* (2005) 37 Cal.4th 733, 739.) Implied malice requires knowledge that conduct endangers the life of another and a conscious disregard for life. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181; *People v. Palomar* (2020) 44 Cal.App.5th 969, 976.)

Here, the preliminary hearing testimony of the investigating police officers about their interviews with Allen, and Allen's plea admission provided substantial evidence that Allen acted as an accomplice to the murder with his own intent to kill. As the trial court stated, the evidence showed that Allen—by his own admission to the investigating police—

---

[7]     Allen suggests that the trial court's statement that "assuming it were necessary" to consider evidence outside the plea admission implies the court concluded the preliminary hearing transcript "was not pertinent to its decision …." This is not an accurate characterization of the order, in which the court makes clear that it reviewed the transcript and found that the evidence set forth therein also supported its finding that Allen was a direct aider and abettor of the murder, and shared the actual shooter's intent to kill the victim.

planned to hunt down Hispanic gang members in Vista and Oceanside together with the three other perpetrators. Allen told police that the group had left the party they were at to "smoke some esses." They were armed with two guns, and Allen admitted he was present for the string of shootings perpetrated over the night, including target practice in a residential neighborhood, shooting into an occupied house, and shooting at two men, resulting in the killing of one. Although evidence showed that Allen stayed in the car with Gooden when the victim was killed, Allen's admission to direct aiding and abetting of the killing and the admissible circumstantial evidence contained in the preliminary hearing transcript supported the trial court's finding that Allen acted with intent to kill.

This case bears some factual similarities to *Ramirez, supra*, 71 Cal.App.5th 970, on which Allen relies. *Ramirez*, however, does not support reversal here. Critically, the youthful defendant in *Ramirez* was tried to a jury verdict of guilt on a theory of felony murder. The defendant participated in a carjacking that resulted in the death of the victim. (*Id*. at p. 975.) As a result, the resentencing court was required to find beyond a reasonable doubt that the defendant, as an aider and abettor of a separate felony, was a major participant in that felony and acted with reckless indifference to human life. (*Id*. at p. 985.) The inquiry here is different because Allen pleaded guilty to *directly* aiding and abetting second degree murder, *not* as an aider and abettor to a different felony (or, as discussed, a different target offense under the natural and probable consequences doctrine). For this reason, the analysis set forth in *Ramirez* does not apply. Rather, Allen's admission to directly aiding and abetting a murder, in concert with the admissible evidence contained in the preliminary hearing transcript, supports the trial court's finding that Allen shared his cohorts' intent to kill. Accordingly, the

16

trial court did not err in finding Allen is not entitled to the relief afforded by Senate Bill 1437.

## DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

DATO, J.